UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED MAR 2 6 2014

Peter A. Shamoun, et al.,

        Plaintiffs,

      —v—

Howard Brandon Mushlin, et al.,

        Defendants.

No. 12 Civ. 3541(AJN)

MEMORANDUM
AND ORDER

ALISON J. NATHAN, District Judge:

Defendants Howard Brandon Mushlin, Keith Cannon, and Bulldog Capital Funding LLC (collectively, "Defendants") move to dismiss the complaint of Plaintiffs Peter A. Shamoun, Alfred J. Zaccagnino, Samarian Group, LLC, and Leonard Barrie, Jr. (collectively, "Plaintiffs"), for lack of personal jurisdiction and failure to state a claim upon which relief can be granted under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). As explained below, the Court concludes that Plaintiffs have not met their burden of establishing a *prima facie* case of personal jurisdiction over the Defendants, and GRANTS the motion to dismiss.

## I.   BACKGROUND

The following facts are derived from the Amended Complaint ("AC") and Plaintiff's papers in opposition to the Defendants' motions, and are assumed true and construed in the light most favorable to Plaintiffs.

### A.   Facts

Plaintiffs Peter A. Shamoun, Alfred J. Zaccagnino, and Leonard Barrie, Jr. are business professionals working throughout the United States on various financial transactions involving real estate, bonds, and broker dealers for clients worldwide. AC ¶ 13; Shamoun Decl. at 2. Shamoun and Zaccagnino are principals of Samarian Group, LLC, a New York limited liability company in New York County. AC ¶¶ 4, 13.

Defendants Howard Brandon Mushlin and Keith Cannon are residents of states other than New York, and are members of Defendant Bulldog Capital Funding LLC ("Bulldog"), believed to be a Missouri limited liability company. AC ¶¶ 5–7. Bulldog operates a website at bulldogcapitalgroup.com, which includes information about Bulldog's private banking services and Mushlin. AC ¶ 7; Heimerl Decl. Ex. J ("Website Materials Bulldog Capital Funding & Brandon Mushlin").

The parties' dispute in the instant case arises from another website, scamfraudreport.org, which accused Plaintiffs of fraudulent activities. The accusations made by the site involve an ill-fated "Kasikorn Bank Transaction," a financial transaction involving Plaintiffs, Defendants, and various third parties.

Seeking to "monetize cash and asset backed accounts for businesses and for investment purposes," Plaintiffs had "formed loose associations" in late 2010 with one Muhammed Gazanifer Khan, who operated a firm, Calibrated Trading, Ltd., in partnership with the licensed securities trader Kirk Bradach, and who was represented by Rollie A. Peterson, a California attorney. AC ¶ 14; Shamoun Decl. at 2. In spring of 2011, Khan introduced Plaintiffs to Defendants Mushlin and Cannon and their company, Bulldog Capital Group, LLC. AC ¶ 15.

For the most part, "Plaintiffs['] involvement with Bulldog, Mushlin[,] and Cannon was very limited and managed almost entirely by Khan and Peterson." AC ¶ 24. The parties worked together on a transaction involving Kasikorn Bank in Thailand, which required investment funds for bank and operational fees. Shamoun Decl. at 3. As part of this transaction, "Bulldog and Mushlin arranged for the transfer . . . on June 10, 2011 [of] $155,000.00" from "Bulldog client Jim Hermmann, a New York resident," "to Rollie Peterson's IOLTA Trust Account." AC ¶ 15.[1] The money was sent from Hermmann's New York Wells Fargo account. Shamoun Decl. 3.[2]

---

[1] The Defendants respond that "[n]either of the wire transfers of loan proceeds came from a New York bank," Mushlin Reply Decl. ¶ 8, but their controverting presentation may not be considered in determining whether the Plaintiffs have made a *prima facie* showing of jurisdiction. *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013).

[2] Plaintiffs also allege a transfer involving a company, Curtis Whitley Holdings, but do not allege that that transfer came from New York.

Plaintiffs played a role in arranging for the Defendants to have their client complete the wire transfer, and while doing so the Plaintiffs were "working primarily through Samarian out of New York" and "had multiple contacts to and from both Mushlin and Cannon in New York from [Samarian Group, LLC's] corporate offices." Shamoun Decl. at 4.

Roughly one month after Jim Hermmann wired money to Rollie Peterson, i.e. in or around July 2011, Khan revealed that "he had misrepresented the Kasikorn Bank transaction." Shamoun Decl. at 4. Plaintiffs then agreed to end their business relationships with the Defendants, Khan, and Khan's associates. Shamoun Decl. at 4.

Meanwhile, on July 25, 2011, an anonymous user registered and created scamfraudreport.org using GoDaddy.com and an anonymous proxy service. AC ¶ 17. Plaintiffs allege upon information and belief that the Defendants created and hosted the site, and suggest that the Defendants shielded their activities by anonymously using a server in Russia operated by a company in St. Petersburg, Russia. AC ¶¶ 35, 37.

Plaintiff Shamoun discovered the website in or around February 2012, and found that the only original content it contained pertained to the parties in this case. AC ¶¶ 19–20. Although the site appeared to provide a generic venue for lodging consumer complaints, it largely or almost entirely consisted of attacks against Shamoun. AC ¶ 21; Heimerl Decl. Ex. C. The website made claims such as "Shamoun [is a] scam fraud broker for financial services [who] fails to perform, disconnects phone and denies return of client's money," who "has NOT closed any real financial transaction in years." Heimerl Decl. Ex. C. Scamfraudreport.org also posted redacted documents from the Kasikorn transactions, scrubbing out information identifying the Defendants while leaving in information about the Plaintiffs. AC ¶ 20; *see also* Heimerl Decl. Ex. D. The site used "[t]argeted content 'tag' labels . . . to draw people performing internet searches." AC ¶ 23. These tags features words and phrases including "scam," "fraud broker," "bank instrument scams," and other similar terms. *Id.*

Shamoun informed Zaccagnino about the site, and Zaccagnino left a voice mail for Mushlin. AC ¶ 22. Several days later, still in February 2012, attacks on Zaccagnino were posted,

but back-dated to January 3, 2012. AC ¶ 22.  At some later date, material was also posted about

Barrie.  AC ¶ 34.  Altogether, the site declared, directly and indirectly, that an independent

international group of professionals had thoroughly investigated complaints against Plaintiffs and

had "verified, documented[,] and proven" that Plaintiffs commit frauds and scams. AC ¶¶ 26, 30.

### B.   Procedural History

Plaintiffs initially filed their Complaint on May 3, 2012, accusing Mushlin, Cannon,

Bulldog, and several other parties of defamation and other torts.  Dkt. No. 1.  Plaintiffs

voluntarily dismissed several defendants on September 13, 2012, including The GoDaddy

Group, Inc., Godaddy.com, LLC, and Domains By Proxy, LLC. Dkt. No. 12.[3]  Once served, the

remaining Defendants filed a motion to dismiss, and Plaintiffs elected to file the Amended

Complaint. Dkt. No. 45.

The AC brings seven tort claims, including defamation, intentional infliction of emotional

distress, negligent infliction of emotional distress, negligence, outrageous conduct, defamation

*per se*, and false light.  The claims all arise from the same core factual allegations, that the

Defendants defamed Plaintiffs by publishing false claims about them on scamfraudreport.org, a

website they created and operated to mislead the public into believing the Plaintiffs committed

fraud.  *See* AC ¶¶ 40–79.

Defendants again moved to dismiss. Dkt. No. 48.  Plaintiffs opposed the motion, and

provided additional papers in support of jurisdiction, including declarations from Barrie and

Shamoun and various exhibits. Dkt. Nos. 53–57.[4]  Defendants then replied in support of their

motion. Dkt. Nos. 59–61.

## II.   RULE 12(B)(2) LEGAL STANDARDS

Defendants bring a Rule 12(b)(2) motion to dismiss the complaint for lack of personal

jurisdiction.  "[P]ersonal jurisdiction over a defendant in a diversity action is determined by

---

[3] Plaintiffs also sued www.scamfraudreport.org and Does 1–100, but these parties have not been served.
[4] Without leave to do so, Plaintiffs' memorandum exceeded by fifteen pages the twenty-five page limit set by the Court's Individual Rules.  The Court nonetheless considered the Plaintiffs' arguments in full.

reference to the law of the jurisdiction in which the court sits." *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir. 1985); *see* Fed. R. Civ. P. 4(k)(1)(A).[5] "In deciding a pretrial motion to dismiss for lack of personal jurisdiction a district court has considerable procedural leeway. It may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981).

Plaintiffs bear the burden of establishing personal jurisdiction, *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001), through a *prima facie* case that "plead[s] in good faith legally sufficient allegations of jurisdiction." *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990) (citation omitted). The Court may "consider[] materials outside the pleadings . . . [in deciding the] motion to dismiss for lack of personal jurisdiction," but must determine whether Plaintiffs "ha[ve], through [their] pleadings and affidavits, made a *prima facie* showing of personal jurisdiction 'notwithstanding any controverting presentation by'" the Defendants. *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013) (quoting *Marine Midland Bank*, 664 F.2d at 904). The Court accepts Plaintiffs' allegations as true, and construes the pleadings in the light most favorable to Plaintiffs, resolving all doubts in their favor. *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001).

## III.   DISCUSSION

New York determines whether a court may exercise personal jurisdiction over an out-of-state defendant through its long-arm statute. *See* New York Civil Practice Law and Rules (CPLR), art. 3, § 301 *et seq.* The provisions of CPLR § 302 are equivalent to the concept of "specific jurisdiction," wherein jurisdiction arises out of or relates to the defendant's contacts

---

[5] If state law authorizes jurisdiction over a defendant, the Court must also ensure that exercising personal jurisdiction would comport with the "traditional notions of fair play and substantial justice" guaranteed by federal due process. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. ___, ___, 131 S. Ct. 2846, 2853, 180 L. Ed. 2d 796 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (internal quotation marks omitted). Because Plaintiffs fail to make a prima facie case of jurisdiction arising under CPLR §§ 302(a)(1), (a)(2), and (a)(3), the Court does not need to analyze whether the Due Process Clause would permit jurisdiction.

with the forum state. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985).

Plaintiffs assert that CPLR sections 302(a)(1), (a)(2), and (a)(3) each provide a basis for

exercising jurisdiction over the Defendants. *See* Pls.' Mem. 24–32.  Section 302 provides in

pertinent part that:

> (a) As to a cause of action arising from any of the acts enumerated in this section,
> a court may exercise personal jurisdiction over any non-domiciliary, or his
> executor or administrator, who in person or through an agent:

>> 1. transacts any business within the state or contracts anywhere to supply
>> goods or services in the state; or

>> 2. commits a tortious act within the state, except as to a cause of action for
>> defamation of character arising from the act; or

>> 3. commits a tortious act without the state causing injury to person or
>> property within the state, except as to a cause of action for defamation of
>> character arising from the act, if he

>>> (i) regularly does or solicits business, or engages in any other
>>> persistent course of conduct, or derives substantial revenue from
>>> goods used or consumed or services rendered, in the state, or

>>> (ii) expects or should reasonably expect the act to have
>>> consequences in the state and derives substantial revenue from
>>> interstate or international commerce . . . .

## A.   CPLR §§ 302(a)(2), (a)(3)

As is clear from the text of the statute, Sections 302(a)(2) and (a)(3) prohibit the exercise

of jurisdiction over non-domiciliary tortfeasors in defamation claims.  "Defamation claims are

accorded separate treatment to reflect the state's policy of preventing disproportionate

restrictions on freedom of expression." *SPCA of Upstate N.Y., Inc. v. Am. Working Collie Ass'n*,

18 N.Y.3d 400, 404, 963 N.E.2d 1226, 1228 (2012).

Plaintiffs attempt to evade the express exception for defamation actions and establish

jurisdiction through CPLR sections 302(a)(2) and 302(a)(3) by asserting other tort claims,

including intentional infliction of emotional distress, outrageous conduct, defamation *per se*, and

false light, all based on allegations that the Defendants published false claims about Plaintiffs

6

online. *See* AC ¶¶ 40–79; Pls.' Mem. 29–30.[6]  However, it is well-established that Plaintiffs cannot evade this exception by recasting their defamation claims as other torts. *See Cantor Fitzgerald, L.P. v. Peaslee*, 88 F.3d 152, 157 (2d Cir. 1996) ("All of plaintiffs' claims are based upon [the] alleged defamatory statements. Plaintiffs may not evade the statutory exception by recasting their cause of action as something other than defamation.") (citing *Jolivet v. Crocker*, 859 F. Supp. 62, 65 (E.D.N.Y. 1994) ("[Because] these claims are based on the alleged defamatory letter, . . . § 302(a)(3) cannot serve to supply a basis for personal jurisdiction. To rule otherwise would provide a facile means for plaintiffs . . . to evade the statutory defamation exception . . . .")); *American Radio Ass'n, AFL-CIO v. A.S. Abell Co.*, 58 Misc. 2d 483, 296 N.Y.S.2d 21, 23 (N.Y. Sup. Ct. 1968) ("[P]laintiffs' attempt to convert the alleged tort from defamation to something else must be rejected as spurious.").  All of the Plaintiffs' claims are factually based upon the allegedly defamatory statements published online, so the defamation exception applies and neither section 302(a)(2) nor section 302(a)(3) can support personal jurisdiction over the Defendants.

Jurisdiction also does not lie under section 302(a)(2) for the additional reason that Plaintiffs do not allege that the Defendants published the website *in* New York. *See* AC ¶¶ 35–37.  "CPLR § 302(a)(2) reaches only tortious acts performed by a defendant who was physically present in New York when he performed the wrongful act," and New York law establishes that a tort committed by publishing information on a website occurs in the place where the publishers were at the time. *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 27–28 (2d Cir. 1997) (citing *Feathers v. McLucas*, 15 N.Y.2d 443, 458, 209 N.E.2d 68 (1965)); *see also Pincione v. D'Alfonso*, 506 F. App'x 22, 25 (2d Cir. 2012) (declining to reconsider *Bensusan* because *Feathers* appeared to remain good law).  Since Plaintiffs do not allege that Defendants were ever physically present in New York, there is no basis for jurisdiction under section 302(a)(2).

---

[6] The Plaintiffs withdrew their claims for negligent infliction of emotional distress and negligence in their opposition to the motion to dismiss. Pls.' Mem. 38.

**B.      CPLR § 302(a)(1)**

Although defamation is excepted from sections 302(a)(2)–(3), "personal jurisdiction over a claim for defamation may still be obtained under [CPLR § 302(a)(1),] the transacting-business prong of the long-arm statute," *Symmetra Pty Ltd. v. Human Facets, LLC*, No. 12 Civ. 8857 (SAS), 2013 WL 2896876, at *5 (S.D.N.Y. June 13, 2013), which allows the exercise of jurisdiction over a non-domiciliary who "transacts any business within the state." CPLR § 302(a)(1). This provision has two prongs, and Plaintiffs must demonstrate both that (1) the Defendants transacted business in New York, and that (2) the Plaintiffs' cause of action arises from that business transaction. *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007).

To satisfy the first prong of the test for jurisdiction under section 302(a)(1), "there must have been some 'purposeful activities' within the State that would justify bringing the nondomiciliary defendant before the New York courts." *SPCA*, 963 N.E.2d at 1228 (internal citation and quotation marks omitted). This purposeful activity must include "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Best Van Lines*, 490 F.3d at 242 (citation and quotation marks omitted).

However, due to free speech concerns, "New York courts construe 'transacts any business within the state' more narrowly in defamation cases," *Best Van Lines*, 490 F.3d at 248, and "are clear that the act of uttering the defamation itself—'no matter how loudly'—does not satisfy this prong." *Biro v. Condé Nast*, No. 11 Civ. 4442 (JPO), 2012 WL 3262770, at *9 (S.D.N.Y. Aug. 10, 2012) (quoting *Best Van Lines*, 490 F.3d at 248) (noting that this aspect of "[d]efamation claims create[s] an interesting challenge for the New York long-arm jurisdiction inquiry"). Therefore, an allegation that the "defendants' out-of-state conduct involved defamatory statements projected into New York and targeting New Yorkers" is insufficient and jurisdiction requires a showing that their "conduct also included something more." *Best Van Lines*, 490 F.3d at 249 (collecting cases and noting that even if a "defendant sent [letters] into New York from outside the state, . . . the act of sending the letters into the state does not alone

8

amount to a transaction of business within the state under Section 302(a)(1)"). Although this case involves allegations of website-based defamation, the Court's "analysis of personal jurisdiction stemming from such activity involves application of 'traditional principles to new situations.'" *Stephan v. Babysport, LLC*, 499 F. Supp. 2d 279, 287 (E.D.N.Y. 2007) (quoting *Best Van Lines,* 490 F.3d at 251–52).[7]

Under these traditional principles, a Plaintiff must show that "the defendant engaged in some purposeful activity within New York that was directly related to the creation of the allegedly defamatory work," such as research, writing, printing, or broadcasting. *Biro*, 2012 WL 3262770, at *10. For example, in *Legros v. Irving*, "all the significant actions culminating in the publication of the [allegedly defamatory] book occurred in New York," including research and printing, as well as the negotiation and execution of the publishing contract. 38 A.D.2d 53, 55–56, 327 N.Y.S.2d 371 (1st Dep't 1971). The Court in *Montgomery v. Minarcin* similarly found jurisdiction after an allegedly defamatory news report was "researched, written, produced[,] and reported" in New York. 263 A.D.2d 665, 667–668, 693 N.Y.S.2d 293 (3d Dep't 1999); *see also Modica v. Westchester Rockland Newspapers, Inc.*, 54 Misc.2d 1086, 283 N.Y.S.2d 939 (Sup.Ct. Westchester County 1967) (defendant published an allegedly defamatory column in a newspaper in New York for New York readers); *Sovik v. Healing Network*, 244 A.D.2d 985, 665 N.Y.S.2d 997 (4th Dep't 1997) (defendants drafted a defamatory letter in the Buffalo area, and either distributed or authorized its distribution there).

In sum, the out-of-state distribution of allegedly defamatory statements cannot constitute a transaction of business in New York unless the Plaintiffs must show that Defendants' "conduct also included something more" that ties them to the state. *Best Van Lines*, 490 F.3d at 249.

In this case, Plaintiffs attempt to obtain jurisdiction over the Defendants under section 302(a)(1) based on three purported acts of transacting business in New York: (1) the

---

[7] The Second Circuit notes that "analyzing a defendant's conduct under the *Zippo* sliding scale of interactivity . . . may be useful for analyzing personal jurisdiction under section 302(a)(1), but only insofar as it helps to decide . . . whether the defendant, through the website, 'purposefully avail[ed] himself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws.'" *Best Van Lines*, 490 F.3d at 252 (quoting *CutCo Indus. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986)).

Defendants' publication of scamfraudreport.org, (2) the Defendants' publication of Defendant Bulldog's website; and (3) the Defendant's role in soliciting a wire transfer of funds from New York in the course of the Kasikorn transaction. Pls.' Opp. Mem. 22–32.

Plaintiffs primarily attempt to establish jurisdiction based upon the alleged publication of scamfraudreport.org that is at the heart of their substantive claim. *See* Pls.' Mem. 22–24. However, the site cannot provide a basis for exercising jurisdiction under section § 302(a)(1), as the Plaintiffs make no allegation that the Defendants performed any activities relating to the website in New York, and instead rely on the website's *effects* in New York.

Plaintiffs' assertions are misplaced because New York differs from states whose long-arm statutes are "coextensive with federal due process requirements," and "has seen fit to confer jurisdiction in a limited subset of cases concerning nondomiciliaries." *Ehrenfeld v. Bin Mahfouz*, 9 N.Y.3d 501, 513, 881 N.E.2d 830, 837–38 (2007). CPLR § 302(a)(1) is not simply "consistent with . . . the 'Effects Test' [that] direct[s] that jurisdiction does hold for defendants who intentionally direct their attack at a person or company," Defs.' Mem. at 27 (citing *SPCA*, 963 N.E.2d 1226; *Calder v. Jones*, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984)), because the New York Court of Appeals has "repeatedly recognized that New York's long-arm statute 'does not confer jurisdiction in every case where it is constitutionally permissible.'" *Ehrenfeld*, 881 N.E.2d at 837 (quoting *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 471, 522 N.E.2d 40, 46 (1988)). Even though "New York decisions, . . . at least in their rhetoric, tend to conflate the long-arm statutory and constitutional analyses," there remains "[s]ome distance . . . between the jurisdiction permitted by the Due Process Clause and that granted by New York's long-arm statute." *Best Van Lines*, 490 F.3d at 247, 248.

By relying on the contention that jurisdiction may be exercised because the Defendants created a website "specifically directed at Plaintiffs and their business activities in New York," Pls.' Mem. 24, the Plaintiffs fail to show that the Defendants' "conduct also included something more." *Best Van Lines*, 490 F.3d at 249. Plaintiffs' allegations are devoid of any claim that "the defendant engaged in some purposeful activity within New York that was directly related to the

creation of the allegedly defamatory work." *Biro*, 2012 WL 3262770, at *10. There is no allegation that the Defendants performed any of the additional activities in New York that courts have cited to justify exercising jurisdiction over a non-domiciliary defamation defendant. "New York case law establishes that making defamatory statements outside of New York about New York residents does not, without more, provide a basis for jurisdiction, even when those statements are published in media accessible to New York readers." *Best Van Lines*, 490 F.3d at 253. Thus the mere "posting of defamatory material on a website accessible in New York does not . . . constitute 'transact[ing] business' in New York for the purposes of New York's long-arm statute." *Best Van Lines*, 490 F.3d at 250.

The Plaintiffs' attempt to establish jurisdiction fares no better under the *Zippo* sliding scale framework for measuring the "nature and quality of commercial activity that an entity conducts over the Internet." *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997). Plaintiffs' own argument is that the modicum of interactivity on the site is "just a ruse," "fraudulently and maliciously designed to make the website appear as a generic venue [for] . . . lodg[ing] consumer complaints[, when] . . . in reality, the site is nothing but a direct targeted tortious attack against Plaintiff[s]." Pls.' Mem. 15. Plaintiffs therefore concede that on the *Zippo* sliding scale, scamfraudreport.org is neither a website for doing business over the Internet nor an "interactive Web site[] where a user can exchange information with the host computer," but is most akin to "[a] passive Web site that does little more than make information available to those who are interested in it." *Zippo Mfg. Co.*, 952 F. Supp. at 1124. Such passive websites are "not grounds for the exercise [of] personal jurisdiction." *Id.* (citing *Bensusan Restaurant Corp. v. King*, 937 F. Supp. 295 (S.D.N.Y.1996)); *see Best Van Lines*, 490 F.3d at 252. Plaintiffs' attempt to establish jurisdiction under section 302(a)(1) through the allegedly defamatory publication of scamfraudreport.org therefore fails.

Next, Plaintiffs point to Bulldog's own website as a basis for jurisdiction. But they do not explain why this is appropriate and they rely on a misleadingly truncated quotation in support of their contention. *See* Pls.' Mem. 26 ("Additionally, the assertion of personal jurisdiction may

be reasonable where a party maintains a website, like Bulldog does, that" performs certain acts in the forum state) (quoting *Grimaldi v. Guinn*, 72 A.D.3d 37, 50, 895 N.Y.S.2d 156 (2d Dep't 2010)). The *Grimaldi* court stated in full that

> [i]f a Web site provides information, permits access to e-mail communication, describes the goods or services offered, downloads a printed order form, or allows online sales *with the use of a credit card, and sales are, in fact, made* in this manner in the forum state, *particularly by the injured consumer*, then the assertion of personal jurisdiction may be reasonable.

72 A.D.3d at 50 (text omitted by Plaintiffs emphasized) (citations omitted).  Against this standard, Plaintiffs fall well short of showing that the Defendants transacted business in New York through the Bulldog website.  Plaintiffs' pleadings and affidavits contain no allegations of online transactions of business or anything remotely akin to the online "sale of goods and services that are delivered after they are ordered by the consumer on his or her home computer."  *Id.*  Plaintiffs' submissions relating to the Bulldog website again show nothing more than pages which passively provide information. *See* Heimerl Decl., Ex. J.  Since the Plaintiffs have not shown that Bulldog's website was used in any transaction of business in New York, it cannot support the exercise of jurisdiction.

Finally, Plaintiffs also seek jurisdiction over Defendants by alleging they transacted business in New York in the course of the Kasikorn transaction by directing Jim Hermmann, one of their clients who resided in New York, to make a wire transfer from his Wells Fargo account in New York to Rollie Peterson, a California attorney retained by a third party. Pls.' Mem. 25–26; Shamoun Decl. 3.  The Plaintiffs focus at length on the wire transfer as a business transaction allegedly touching New York, arguing that because "it [is] true that defendants have transacted any business in New York . . . jurisdiction attaches." Pls.' Mem. 26.

Based on New York courts' application of section 302(a)(1), the Second Circuit has stated that the factors to be considered in determining whether an out-of-state defendant transacts business in New York include:

> (i) whether the defendant has an on-going contractual relationship with a New
> York corporation; (ii) whether [a] contract was negotiated or executed in New
> York and whether, after executing a contract with a New York business, the
> defendant has visited New York for the purpose of meeting with parties to the
> contract regarding the relationship; (iii) what the choice-of-law clause is in any
> such contract; and (iv) whether the contract requires . . . payments into the forum
> state or subjects [a party] to supervision by [a] corporation in the forum state.

*Sunward Electronics, Inc. v. McDonald*, 362 F.3d 17, 22–23 (2d Cir. 2004) (quoting *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996)) (quotation marks omitted). This list is not exhaustive or exclusive, and the Court "must look at the totality of the circumstances concerning the party's interactions with, and activities within, the state." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 787 (2d Cir. 1999).

Although the "mere existence of a contract with a New York corporation is not sufficient to constitute the transaction of business," *Aquiline Capital Partners LLC v. FinArch LLC*, 861 F. Supp. 2d 378, 387 (S.D.N.Y. 2012) (citation omitted), Plaintiffs have not even alleged that the Defendants have *one* contract with a New York corporation, let alone an "on-going contractual relationship with a New York corporation." *Sunward Electronics*, 362 F.3d at 22. Plaintiffs acknowledge that their "involvement with Bulldog, Mushlin[,] and Cannon was very limited and managed almost entirely by Khan and Peterson." AC ¶ 24. Plaintiffs make no allegation that the Defendants negotiated or executed a contract in New York, or even visited New York at all. *Cf. Sunward Electronics*, 362 F.3d at 22.

Even in the light most favorable to Plaintiffs, ignoring the Defendants' affidavits in response, the Plaintiffs' showing falls short. Plaintiffs allege at most that Defendants helped arrange a single transfer of money from a New York resident to a California attorney, neither of whom are parties in this case. There is a sliver of a connection to New York in the allegation that the Defendants "knew that [the Plaintiffs'] team was working primarily through Samarian out of New York, and [the Plaintiffs] had multiple contacts to and from [the Defendants] in New York from [the Plaintiff's] corporate offices." Shamoun Decl. 4. But these allegations fall far

short of "'purposeful activities' within the State that would justify bringing the nondomiciliary defendant before the New York courts." *SPCA*, 963 N.E.2d at 1228 (quoting *McGowan v. Smith*, 52 N.Y.2d 268, 271, 419 N.E.2d 321, 322 (1981)). Under New York's long-arm statute, "[o]nly in a rare case should [non-domiciliary defendants] be compelled to answer a suit in a jurisdiction with which they have the barest of contact." *Aquiline Capital Partners*, 861 F. Supp. 2d at 386 (quoting *Hutton v. Priddy's Auction Galleries*, 275 F. Supp. 2d 428, 439 (S.D.N.Y. 2003)).

Plaintiffs fail to make the necessary prima facie showing necessary for the Court to exercise jurisdiction over the Defendants pursuant to section 302(a)(1). *See Best Van Lines*, 490 F.3d at 246. The Court therefore need not determine whether the Plaintiff's claims arise from those transactions, whether the exercise of jurisdiction would comport with due process, or whether the Plaintiffs have adequately stated a claim upon which relief can be granted.

## IV.    CONCLUSION

The Court does not have personal jurisdiction over Defendants under any portion of New York's long arm statute. Defendants' motion to dismiss for lack of personal jurisdiction is GRANTED. The Clerk is directed to close this case.

SO ORDERED.

Dated: _____Mencl 26_____, 2014
       New York, New York

_____
ALISON J. NATHAN
United States District Judge